## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ANGINO and ALICE | : | |
| ANGINO, | : | CIVIL NO. 1:15-CV-438 |
| | : | |
| Plaintiffs, | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SANTANDER BANK, N.A., | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This lawsuit, which comes before us for consideration of a motion to dismiss, is one of several cases[1] brought by the plaintiffs against various financial institutions arising out of a common core of operative facts. These cases all share several essential elements. In each instance the case presents a sad coda to the successful professional career of the plaintiff, Richard Angino, a local attorney, and his wife, Alice Angino. It also presents a familiar, yet tragic, tale of plaintiffs whose economic ambitions exceeded their financial resources. Fueled by these ambitions, the plaintiffs borrowed millions of dollars from various lending institutions, including Santander Bank. When their dreams and ambitions confronted harsh economic realties, the plaintiffs defaulted on some of their loan obligations, including a residential mortgage owed to Santander

---

[1]See Angino v. Wells-Fargo, Civ No. 1:15-CV-418; Angino v. Santander Bank, Civ. No. 1:15-CV- 1145.

Bank on a luxury vacation home, and the bank did what its agreement with these borrowers permitted it to do: it commenced foreclosure proceedings.

In the instant case, however, this tragic tale has a twist. The borrowers, who have undeniably defaulted on their loan obligations under this mortgage agreement, have now sued their lender, Santander Bank, for exercising its rights under that agreement. The apparent premise of this lawsuit is that the Anginos have some right to compel the bank to modify the mortgage in a fashion that is more favorable to these borrowers, and that the bank's insistence that the parties adhere to the agreed-upon terms of this lending contract now allows the defaulting borrowers to sue their lender. In essence, the plaintiffs seek to sue their way to solvency notwithstanding their undisputed defaults on this million dollar loan. While we feel great sympathy for the circumstances confronting the Anginos, this novel theory draws no support in the law on the facts alleged by the plaintiffs in their complaint, and would wholly undermine principles of commercially reasonable behavior in the marketplace by allowing defaulting borrowers unilaterally to compel loan concessions from their lenders. Therefore, for the reasons set forth below, it is recommended that this complaint be dismissed.

## II.   Statement of Facts and of the Case

The plaintiffs in this action are Richard Angino, a local attorney, and his spouse, Alice Angino. (Doc. 1, ¶1.) The plaintiffs are in their 70s and as Mr. Angino approaches the conclusion of his professional career he and his wife have experienced a series of financial reversals. As described by the Anginos in the well-pleaded facts set forth in their complaint, these financial setbacks are in large measure a product of some $13,000,000 in loans and mortgage indebtedness which they agreed to undertake in connection with various residential and commercial projects over a number of years up through 2002. (Id., ¶13.)

Encumbered with these substantial debts, beginning in 2004 and continuing through November 2007, the Anginos turned to Santander Bank, and its corporate predecessors, Waypoint and Sovereign Bank, for loans and financing. (Id., ¶17.) Ultimately, the ability of the Anginos to service this mountain of debt was undermined by the recession which affected the American economy in 2007 through 2009. (Id., ¶¶21-22.) As a result of these circumstances, by May 2010, the Anginos owed Santander Bank some $6,400,000 and were obliged to make monthly payments of more than $15,000 on mortgage and commercial loans with the bank relating to a South Carolina vacation property and business loan. (Id., ¶23.)

In May of 2010, "based solely on maturity dates" Santander Bank called all of the Anginos' loans, which allegedly totaled some $6,400,000, and declined to renew an $800,000 letter of credit for the plaintiffs. (Id., ¶29.) The Anginos were unable to

meet these loan obligations, and in order to stave off foreclosure proceedings, entered into three loan modification agreements with Santander Bank in July 2011, July 2012, and December 2012. (Id., ¶¶32-40.) These loan modifications, however, only provided temporary financial  respite for the Anginos, and as part of the loan modifications the plaintiffs agreed to additional repayment terms, and higher interest rates on their loans, as well as further encumbrance of their assets. (Id.)

Despite these measures, the Anginos' finances continued to decline. By 2013, Richard Angino's legal practice began to suffer a substantial loss of income, and the Anginos' efforts to secure further concessions from Santander Bank and their other creditors were unsuccessful. (Id., ¶¶40-43.) As a result the Anginos fell behind on their payments on a series of loans, including the second home mortgage which they had with Santander Bank for a luxury vacation property in South Carolina. (Id., ¶44.)

This undisputed loan default had predictable consequences for the Anginos as borrowers who owed more than $1,000,000 to the bank. The Anginos began receiving numerous delinquency notices and demands for repayment from Santander Bank in 2013. (Id., ¶47.) When these notices and demands did not result on the Anginos curing their loan defaults,  in June 2014 Santander Bank commenced mortgage foreclosure proceedings against the Anginos. (Id., ¶48.)   According to the Anginos, these foreclosure proceedings forced them to sell the luxury South Carolina vacation home at a "distressed price" of $1,590,000, and virtually all of the proceeds of this sale were

demanded and received by Santander Bank under the terms of its mortgage agreement with the Anginos. (Id., ¶¶55-59.)

Notably, the Anginos' current complaint does not allege that any of these actions by the bank violated the terms of their loan agreements with this financial institution. Indeed, the only breach of this agreement between the parties articulated by the Anginos in their complaint is the plaintiffs' breach of their obligation to make timely loan payments. Instead, the Anginos seem to allege that the bank is liable to them because the bank enforced its rights under these agreements, and after agreeing to three loan modifications refused to further modify these loan terms in a fashion that would have been more favorable to these defaulting borrowers. Thus, the apparent premise of this complaint is that the plaintiffs have some right to compel the bank to modify agreed-upon loan terms to its detriment and to the benefit of these defaulting borrowers.

Based upon these averments, the Anginos have filed a four-count civil complaint, which combines and conflates various claims and causes of action. In Count I the Anginos allege that Santander's insistence on exercising its contractual rights under these loan agreements violated the Home Affordable Modification Program (HAMP), a federal program designed to assist some banks and borrowers, constituted a breach of contract, a breach of a duty of good faith, and was barred by the impossibility doctrine of contract law. (Id., ¶¶61-72.) Count II of the complaint, in turn,

alleged that the bank engaged in unfair and deceptive practices under Pennsylvania' Unfair Trade Practices and Consumer Protection law, 73 Pa.C.S. §201-1, when it refused to further modify these loans and instead commenced foreclosure proceedings. (Id., ¶¶73-83.) Count III of the complaint alleged violations of the federal Fair Credit reporting Act, by the bank. These alleged Fair Credit Report Act violations appear to have pertained to the bank's factually accurate reports that the Anginos had defaulted on their loan. (Id., ¶¶84-88.) Finally, Count IV of the complaint accuses the bank of fraud, deceit and the intentional infliction of emotional distress. (Id.,¶¶89-91.)

Presented with this novel, and multi-faceted complaint, Santander Bank has now moved to dismiss the complaint citing numerous legal deficiencies in this pleading. (Docs. 14 and 15.) The Anginos, in turn, have responded to this motion to dismiss by conceding that some of their legal claims fail, but defending other claims made in their complaint, and by asserting in their motions papers new facts which were not previously alleged in their complaint. In particular, the Anginos now allege, for the first time, that Santander Bank may have made additional offers of refinancing to them – offers which it ultimately failed to provide to the plaintiffs. (Doc. 16, pp. 9-11.) Santander Bank's motion to dismiss is fully briefed and, therefore, is now ripe for resolution.

While we note that the plaintiffs' claims seem to have transmogrified factually in the course of this litigation, when we consider the allegations actually made by the

plaintiffs in their complaint, we find that those allegations do not state a claim upon which relief may be granted. Therefore, we recommend dismissal of this complaint as it is currently pleaded by the plaintiffs. We leave for another day the question of whether the plaintiffs can plead additional facts in support of any of their claims, as they apparently may be attempting to do in their motions papers.

## II.   Discussion

### A.   Rule 12(b)(6)– The Legal Standard.

Santander Bank has filed a motion to dismiss this amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678.   Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of

truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B.   As Currently Pleaded This Complaint Fails to State a Claim Upon Which Relief May Be Granted

There is an overarching flaw to this complaint, as it is currently drafted. In its current form, the Anginos' complaint against Santander Bank rests on a novel premise, albeit a premise which seems legally and commercially untenable. The well-pleaded facts in this complaint do not allege any specific breach of agreed-upon loan terms by the bank. Rather, the only persons who are alleged to have breached these written loan agreements are the plaintiffs, who acknowledge defaulting on their loan repayment obligations during a time of personal financial hardship. Further, the Anginos' complaint seems to acknowledge that Santander Bank attempted to work with these borrowers to stave off loan defaults by negotiating three loan modification agreements. While the Anginos label these modifications as coerced, unfair and "extortionary," nothing in the complaint recites well-pleaded facts which would support these characterizations. Instead, the complaint simply notes that as part of these loan modifications the bank sought increased collateral, accelerated loan payments, and a more favorable interest rate on these loans which had become increasingly problematic due to the plaintiffs' financial circumstances. Furthermore, it is apparent from the well-pleaded facts set forth in the complaint that these loan modification agreements were arms-length transactions between two financially sophisticated parties, the Anginos and the bank.

Yet, while the Anginos seem to concede that the bank modified its loan agreements with them on three occasions, never breached any of these agreed-upon loan terms, and only exercised its rights under these agreements after the Anginos breached their loan repayment obligations, the plaintiffs seek to hold the bank financially liable to them because it refused to further re-modify its modified loan agreements to its financial detriment and to the direct benefit of these defaulting borrowers. Thus, the premise of the complaint, as written, seems to be that borrowers have a legal right to compel lenders to forego their rights under a loan agreement, and may recover damages when lenders decline to unilaterally surrender their contract rights.

This is a proposition which is breathtaking in its implications, and commercially unreasonable in its reach. Taken to its logical extreme this notion would wholly undermine confidence in commercial and residential lending markets, since it would suggest that borrowers may default on loan obligations, and then hold lenders liable for enforcing the terms of these loans. If we embraced this suggestion, we would, in effect, undermine confidence in these financial marketplaces by simultaneously eroding certainty in lenders' ability to enforce loan agreements, and creating a heightened, and largely undefined, legal risk for lenders, who would be subject to suit for exercising their rights under mortgage and loan agreements. Absent extraordinary circumstances, we should decline such a commercially novel, but legally untenable,

invitation, particularly since in its current form the plaintiffs' complaint does not allege well-pleaded facts which would justify this extraordinary course.

Beyond this overarching infirmity, we find that the complaint is legally flawed in the following specific respects, in ways which singly and combined, also compel the dismissal of this lawsuit. These distinct legal flaws in this pleading are discussed separately below.

### 1. The Federal Home Affordable Modification Program, (HAMP),and the Dodd-Frank Financial Reform Law Do Not Provide the Anginos with a Private Right of Action Against Santander Bank

At the outset, the plaintiffs' complaint seems to allege some type of private right of action on behalf of the plaintiffs against the bank under the Home Affordable Modification Program (HAMP), a federal program designed to assist some banks and borrowers, and the Dodd-Frank financial reform laws. These claims merit only brief consideration by this court. First, it is undisputed that "HAMP does not provide a private right of action. See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n. 4 (7th Cir.2012) (noting that 'HAMP does not create a private federal right of action for borrowers against servicers')." Sinclair v. Citi Mortgage, Inc., 519 F. App'x 737, 739 (3d Cir.) cert. denied sub nom. Sinclair v. Citi Mortgage, Inc, 134 S. Ct. 245, 187 L. Ed. 2d 182 (2013) reh'g denied sub nom. Sinclair v. Citi Mortgage, Inc., 134 S. Ct. 1054, 188 L. Ed. 2d 140 (2014). "Quite the contrary, 'federal courts across the country

have held that HAMP does not create a private right of action for borrowers.' " Taylor

v. Sovereign/Santander Bank, No. 1:15-CV-123, 2015 WL 757543, at *5 (M.D. Pa.

Feb. 23, 2015)(collecting cases). Therefore, it is well-settled that the Anginos may not

premise a private right of action upon the HAMP program.  Indeed, the plaintiffs now

concede that "there does not exist a private right of action under HAMP." (Doc. 16,

p.1.)

Likewise with narrow exceptions that are not pertinent here, the Dodd-Frank Act

does not provide for a private right of action by borrowers against lending institutions.

See, e.g., Regnante v. Sec. & Exch. Officials, No. 14 CIV. 4880 KPF, 2015 WL

5692174, at *7 (S.D.N.Y. Sept. 28, 2015); Diena v. Certified Credit & Collection

Bureau, Inc., No. 14 Civ. 769(AET), 2015 WL 570247, at *2 (D.N.J. Feb. 11, 2015)

("Plaintiff offers no statutory basis for the existence of a private right of action under

the Dodd–Frank Act[.]")); Levine v. Entrust Grp., Inc., No. 12 Civ. 3959(WHA), 2013

WL 1320498, at *7 (N.D.Cal. Apr. 1, 2013) ("Under the Dodd–Frank Act, the Court's

research can find no private right of action.")).Therefore these claims should also be

dismissed.

## 2.   The Anginos May Not Maintain a Claim Against Santander Bank Under the Fair Credit Reporting Act

Likewise the Anginos may not maintain a claim against Santander Bank under

the federal Fair Credit Reporting Act, 15 U.S.C. §1681 (FCRA).  These alleged FCRA

violations appear to relate to the bank's factually accurate reports that the Anginos had

defaulted on their loan. (Id., ¶¶84-88.)  The Anginos' complaint does not allege which

provision of FCRA they rely upon in making these allegations. However, the only

provisions of the Act that would arguably apply to the reporting of adverse financial

information are found in §1681 s-2 of the Act. Under § 1681 s-2(a)(1)(A), however,

there is no private right of action for reporting inaccurate information to the credit

agencies; instead only the government can pursue such claims. See Noel v. First

Premier Bank, 2012 WL 832992, at *5 (M.D.Pa. Mar. 12, 2012) (citing Simms Parris

v. Countryside Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011)). Further, as a furnisher

of information to credit reporting agencies, Santander can only be liable to private

parties under 15 U.S.C. § 1681s-2(b) if the following conditions are met: (1) notice

was sent by the consumer of disputed information to a consumer reporting agency, (2)

the consumer reporting agency notified the furnisher of the dispute, and (3) the

furnisher failed to investigate and modify the inaccurate information.  Jaramillo v.

Experian Information Solutions, Inc., 155 F.Supp. 2d 356, 362-63 (E.D.Pa. May 21,

2001); Slimm v. Bank of America Corp., 2013 WL 1867035 at*9 (D.N.J. May 2,

2013). The Anginos do not allege that any of these conditions have been met, and in

fact now claim to have abandoned any defense of this claim. (Doc. 16, p. 2.) Therefore,

in the absence of any legal or factual justification for this claim, Count III of the

complaint, which alleged FCRA violations, should also be dismissed.

### 3.   The Anginos Have Failed to Properly Allege Common-Law Fraud or Violations Unfair and Deception Practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1

Furthermore, in its current form, the Anginos' complaint does not sufficiently allege either common-law fraud or a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1.

With respect to the Anginos' common-law fraud allegations, beyond labeling the bank's conduct as fraudulent, the plaintiffs' complaint is devoid of any well-pleaded factual allegations which would support these serious claims. Thus, the plaintiffs provide no description of the allegedly fraudulent representations which they contend were made here by the bank. Furthermore, the plaintiffs do not allege any facts which would support an inference that the bank's decision to enforce its contractual rights under these modified loan agreement constituted some form of fraud upon the Anginos.

These deficiencies in the plaintiffs' complaint are particularly glaring since the rules governing specificity of pleading fraud in federal court call for much greater clarity in pleading and proof to sustain such grave allegations. As the United States Court of Appeals for the Third Circuit has observed:

> [A]llegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the

'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.". Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation*.

Lum v. Bank of America, 361 F.3d 217, 223-4 (3d Cir. 2004)(citations omitted, emphasis added).

Thus, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story."' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). 'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."' In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied)." Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J. 2008).

Here, when judged against the heightened pleading standards demanded by Rule 9, the Anginos' allegations of fraud are wholly deficient. Indeed, the Anginos concede as much in their response to this motion to dismiss where they withdraw these claims

of fraud and deceit against Santander Bank. (Doc. 16, p.2.) Therefore these common law fraud claims should be dismissed.

The Anginos' closely related claims of deceptive conduct under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1 (UTPCPL) seem flawed in a similar fashion. As to this count of the complaint, the plaintiffs have adopted a curious legal posture. Unlike their common-law fraud claim, the plaintiffs have not abandoned this specific state statutory claim. However, neither have the plaintiffs directly addressed defendants' legal objections to this count of the complaint in a thorough and comprehensive way.

A review of the complaint suggests that, as drafted, the Anginos' claims against Santander appear to be premised upon §2011-2(4 )(xxi) of the UTPCPL, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." This statutory prohibition against "deceptive conduct does not require proof of the elements of common law fraud, but . . . knowledge of the falsity of one's statements or the misleading quality of one's conduct is still required." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013). "Therefore, in order '[t]o establish liability under the catch-all provision of the UTPCPL, "a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2)

justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." Slapikas v. First Am. Title Ins. Co., CIV.A. 06–0084, —— F.R.D. ——, ——, 2014 WL 899355, at *6 (W.D.Pa. Mar.7, 2014) (citing Seldon v. Home Loan Servs., 647 F.Supp.2d 451, 470 (E.D.Pa.2009); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 223 (3d Cir.2008)).' Prukala v. Elle, 3:14–CV–92, 2014 WL 1311125, *3 (M.D.Pa. Mar.28, 2014)." Stephens v. State Farm Fire & Cas. Co., No. 1:14-CV-160, 2014 WL 5312682, at *9 (M.D. Pa. Oct. 16, 2014).

In this case, as it is currently pleaded, the plaintiffs' UTPCPL claim simply does not identify any affirmative deceptive acts by Santander Bank upon which the plaintiffs justified relied to their financial detriment. Instead, the gist of this state law claim appears to be the plaintiffs' assertion that Santander Bank did not comply with the federal HAMP guidelines, thereby denying them an opportunity to modify this loan a fourth time. While we find that these spare allegations are insufficient to meet the elements of a claim under the UTPCPL, we note that courts have sustained such claims in cases where there have been affirmatively misleading representations made to borrowers by lenders which went beyond mere technical non-compliance with HAMP regulations. See Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787 (E.D. Pa. 2014).

Apparently recognizing the threadbare nature of this claim, as currently pleaded, the plaintiffs have alleged additional facts in their response to the defendant's motion

to dismiss, now alleging for the first time that Santander Bank may have made additional offers of refinancing to them – offers which it ultimately failed to provide to the plaintiffs. (Doc. 16, pp. 9-11.) The difficulty with these belated assertions is that they are not set forth in the complaint and run afoul of the well-settled principle that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Yet, while we cannot rely upon these averments set forth in the Anginos' brief in assessing the sufficiency of this specific allegation, the plaintiffs' assertion that they may be able to allege further well-pleaded facts in support of this particular claim suggests that this count of the complaint should be dismissed without prejudice to the plaintiffs attempting to allege facts which satisfy the elements of a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1.

### 4. The Plaintiffs Have Failed to Allege a Claim for Intentional Infliction of Emotional Distress Upon Which Relief May Be Granted

In Count IV of their complaint the plaintiffs also allege that Santander Bank committed the tort of intentional infliction of emotional distress when it exercised its rights under the loan agreement with the Anginos, refused to further modify that agreement, and commenced foreclosure actions. With respect to claims for intentional infliction of emotional distress, under Pennsylvania law, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress.  Only if conduct which is extreme or clearly outrageous is established will a claim be proven." Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998).  Indeed, the Restatement (Second) of Torts instructs that "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  Restatement (Second) of Torts § 46, comment d; Hoy, 720 A.2d at 754.  In keeping with these restrictive standards, the Pennsylvania Supreme Court has provided examples of conduct found to state a claim for intentional infliction of emotional distress, and such examples demonstrate the extraordinary nature of the theory:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. See e.g., Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); Banyas v.

Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d. Cir.1979)(defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Hoy, 720 A.2d at 754.

Thus, in order to sustain a claim of intentional infliction of emotional distress, Pennsylvania law requires that a plaintiff plead that: "(1) the conduct was extreme and outrageous; (2) the conduct was intentional; (3) the conduct caused emotional distress; and (4) the distress was severe. Silver v. Mendel, 894 F.2d 598, 606 n. 16 (3d Cir.1990). Ultimately, in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that a defendant's conduct exceeded the bounds of decency and is intolerable under prevailing societal norms. Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super.Ct.2005); see also Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir.1988)." Kearney v. JPC Equestrian, Inc., No. 3:11-CV-01419, 2012 WL 1020276, at *7 (M.D. Pa. Jan. 4, 2012) report and recommendation adopted, No. 3:11-CV-01419, 2012 WL 1020266 (M.D. Pa. Mar. 26, 2012).  Applying this exacting standard, courts generally agree that instituting mortgage foreclosure proceedings, a commonplace legal action involving the assertion of legal and contractual rights, simply does not constitute intolerable or outrageous conduct. See, e.g.,  DeHart v. HomEq Servicing Corp., 47 F. Supp. 3d 246, 257 (E.D. Pa. 2014); Messer v. First Fin.

Fed. Credit Union of Maryland, No. CIV.A. 11-4144, 2012 WL 3104604, at \*4 (E.D. Pa. July 30, 2012);  Wilson v. Am. Gen. Fin. Inc., 807 F. Supp. 2d 291 (W.D. Pa. 2011).

Thus, "[w]here a party has a legal right to proceed with a foreclosure, the sending of a notice of intention to foreclose as required by state procedure can give rise to no cause of action for intentional infliction of emotional distress." Brown v. Udren Law Offices PC, No. CIV.A. 11-2697, 2011 WL 4011411, at \*4 (E.D. Pa. Sept. 9, 2011).  In our view, this is what happened in the instant case. The Anginos defaulted on their loans, and Santander Bank then proceeded to do what it had a legal right to do, proceed to a foreclosure. As a matter of law, the exercise of this legal right cannot rise to the level of intolerable or outrageous conduct which exceeds the bounds of decency. Therefore this claim for intentional infliction of emotional distress also fails as a matter of law and should be dismissed.

### 6.   **The Anginos Free-Standing Breach of Duty of Good Faith Claim also Fails, as Currently Pleaded**.

Further, in their complaint the Anginos seems to allege some form of breach of a duty of good faith claim against Santander Bank in connection with the bank's actions under its mortgage agreement with the plaintiffs. As presently pleaded, however, this claim is something of a curiosity since we cannot identify any alleged breach of the mortgage agreement by Santander Bank  that is claimed by the plaintiffs.

Quite the contrary, the only breach alleged in the complaint is the plaintiffs' breach of their contractual obligation to make loan payments. Instead of tying this breach of good faith claim to some specific contractual failing by Santander Bank, the Anginos seems to be asserting that the bank's refusal to forego its contractual rights somehow constituted a breach of this quasi-contractual duty of good faith. In our view, this is a novel, but ultimately untenable, theory of liability for several reasons.

First, as a general rule allegations of a breach of the covenant of good faith sound in contract, rather than tort. See Creeger Brick & Bldg. Supply, Inc . v. Mid–State Bank & Trust Co., 560 A.2d 151, 153 (Pa.Super.Ct.1989) ("Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts."). As a result, courts have found that the breach of the covenant of good faith is subsumed in a claim for breach of contract. See McHale v. NuEnergy Group, No. Civ. A. 01–4111, 2002 WL 321797, *8 (E.D.Pa. Feb. 27, 2002) (concluding that Pennsylvania law would not recognize a claim for breach of the covenant of good faith and fair dealing as a separate cause of action apart from the breach of contract claim, since the actions forming the basis of the breach of contract claim were essentially the same as those brought in support of the bad faith claim); see also JHE, Inc. v. Se. Pa. Transp. Auth., 2002 WL 1018941, *7 (Pa.Com.Pl. May 17, 2002) ("[A] breach of the covenant of good faith is nothing more than a breach of contract claim and ... separate causes of action cannot be maintained for each, even in the alternative."); Commonwealth v.

BASF Corp., No. 3127, 2001 WL 1807788, *12 (Pa.Com.Pl. Mar. 15, 2001) ("Pennsylvania law does not allow for a separate cause of action for breach of either an express or implied duty of good faith, absent a breach of the underlying contract."). Rather, under Pennsylvania law, such a duty of fair dealing is entirely dependent upon the existence of a contractual relationship. In short, Pennsylvania law grafts onto all contracts a responsibility by the contracting parties to deal fairly with one another. However, Pennsylvania law does not recognize an independent, and free-standing, duty of fair dealing outside a contractual context.  As we have previously explained:

> Whether express or implied, the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself. See Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 884 (2007); Birth Center, 787 A.2d at 385;  Murphy, 777 A.2d at 434 & n. 11; Gray, 223 A.2d at 11 ("We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action in assumpsit will lie."); Cowden v. Aetna Cas. & Sur. Co., 389 Pa. 459, 134 A.2d 223, 229 (1957).

> Because the covenant of good faith and fair dealing arises from the contract and not due to the mere relationship of the parties-as, for example, a fiduciary duty-a breach of the covenant sounds in contract, not tort.  See Ash, 932 A.2d at 884. There is, however, no independent cause of action for a breach of the covenant of good faith and fair dealing-arising in contract-in Pennsylvania because such a breach is merely a breach of contract. See Birth Center, 787 A.2d at 385-86; Gray, 223 A.2d at 11. It has been said that a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim. See Meyer v. Cuna Mut. Group, No. 03-CV-602, 2007 WL 2907276, at *14-15 (W.D.Pa. Sept. 28) (citing cases).

Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623, 630-31 (M.D.Pa. 2009).

Since there typically is no separate cause of action under Pennsylvania law for breach of the duties of good faith and fair dealing; Chanel, Inc. v. Jupiter Group, Inc., Civ. No. 3:04-CV-1540, 2006 U.S. Dist. LEXIS 43363, at *6 (M.D. Pa. June 27, 2006); In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 549 (D.N.J. 2004); Blue Mt. Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002); LSI Title Agency, Inc. v. Eval. Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008), a claim for breach of the duties of good faith and fair dealing is, at bottom, simply a claim for breach of the underlying contract. Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623, 630-631 (M.D.Pa. 2009). Yet, in this case the Anginos seem to be alleging a breach of the duty of good faith claim, without asserting a clearly articulated breach of the underlying contract between themselves and Santander Bank, except for their own breach of this agreement. This is a fatal flaw and defeats this claim as it is currently pleaded.

In any event, to the extent that some duty of good faith arises in a contractual setting, it is also  clear that the scope of that duty in a borrower-lender transaction is narrowly defined and does not entail some legal obligation on the part of the lender to unilaterally agree to undermine, modify or defeat its own legal rights and interests

under a mortgage. Thus, "the Supreme Court of Pennsylvania has refused to impose a duty of good faith which would modify or defeat the legal rights of a creditor. Heights v. Citizens National Bank, 463 Pa. 48, 342 A.2d 738 (1975)." Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa. Super. 30, 36, 560 A.2d 151, 154 (1989). Likewise:

> It seems reasonably clear from the decided cases that a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons.

 Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa. Super. 30, 36-37, 560 A.2d 151, 154 (1989). In short, to the extent that Pennsylvania law recognizes a contractual duty of good faith, "courts have ... refused to apply a duty of good faith to alter or defeat the rights of a creditor which have been granted by law *or contract."* Stewart v. SWEPI, LP, 918 F. Supp. 2d 333, 342 (M.D. Pa. 2013)(emphasis in original).

Fairly construed, the plaintiffs' complaint invites us to do precisely what Pennsylvania law says we cannot do through the rubric of a duty of good faith and fair

dealing; that is, require a creditor to alter, defeat, modify, or renounce some contractual rights which it possesses. The all-encompassing duty of good faith asserted by the Anginos in this complaint would also call upon us condemn Santander Bank for taking actions which the courts have expressly stated it is permitted to take such as "adhering to its agreement with the borrower . . . by enforcing its legal and contractual rights as a creditor;" refusing "to surrender rights which it has been given by statute or by the terms of its contract;" or "negotiat[ing] terms of a loan which are favorable to itself." Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa. Super. 30, 36-37, 560 A.2d 151, 154 (1989). Since Pennsylvania case law specifically rejects the notion that a lender must surrender its legal rights in order to demonstrate its good faith to its borrower, the Anginos' good faith claim, which is unmoored to any contractual breach by Santander and demands that Santander forego its contractual rights, fails as a matter of law and should be dismissed.

### 7.   The Plaintiffs May Not Bring an Affirmative Contract Claim Based upon the Impossibility Doctrine

Finally, the Anginos advance a novel but ultimately unpersuasive claim in this litigation. Citing the impossibility doctrine, a narrowly defined defense to contractual liability under Pennsylvania law, the Anginos apparently attempt to transform this contract defense into a quasi-contract claim, insisting that they may sue Santander

Bank for holding them to a loan agreement which they became financially unable to perform.

This claim fails for at least two reasons. First, as the Pennsylvania courts have previously informed the Anginos, the impossibility doctrine is an affirmative defense under Pennsylvania law and does not constitute an independent legal claim. Angino & Rovner, PC v. Santander Bank, N.A., No. 489 MDA 2014, 2015 WL 6405714, at *7 (Pa. Super. Ct. Jan. 28, 2015).  Thus, the Pennsylvania courts have already advised the plaintiffs that they may not transmogrify this defense into a quasi-contractual claim.

More fundamentally, even construed as an affirmative defense to contract liability, this defense is typically limited to instances of physical impossibility, and not mere fiscal impracticability. Thus: "[I]f the allegedly unforeseeable event was in reality a natural and fairly predictable risk arising in the normal course of business, then a court may not dissolve a[n] agreement . . . . An individual's financial position, for example, cannot generally be an implied 'basic assumption' of a contract, nor will it excuse a party's performance. See Restatement (Second) of Contracts § 261 (1981) Comment: b. Basic assumption. Illustration 2 (showing that contracting party's financial situation as result of bank failure does not excuse performance on contract)." Step Plan Servs., Inc. v. Koresko, 12 A.3d 401, 412-13 (Pa. Super. Ct. 2010). In this case, the Anginos attempt to assert the doctrine of impossibility based upon a change

in their fiscal position. This is something they may not do under Pennsylvania law. Therefore, even construed as an affirmative defense to contract liability, this claim would fail as pleaded by the Anginos, and should be dismissed.

In closing, although we feel great sympathy for the financial plight which confronts the plaintiffs at this juncture in their lives, those considerations of sympathy do not permit us to forego the requirements of the law, and in this setting the law simply does not permit the plaintiffs, who defaulted on these loan obligations, to litigate their way to liquidity by suing the bank which lent them money simply because that financial institution declined to modify its loan agreement with the plaintiffs on a fourth occasion to its detriment and the plaintiffs' benefit. Nor can the plaintiffs seek solvency through a lawsuit based upon the proposition that the bank engaged in tortious misconduct when it enforced its contractual rights through legal process by commencing foreclosure proceedings.

## IV. __Recommendation__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Motion to Dismiss filed by Santander Bank (Doc. 14) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days

after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of December, 2015.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge